**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Kathleen Hoskins,          )     No. CV-06-1475-PHX-FJM
                              )
        Plaintiff,      )     **ORDER**
                                )
vs.                      )
                                )
Metropolitan Life Insurance Co., et al.,  )
                                )
        Defendants.    )
                                )

      The court has before it defendant Metropolitan Life Insurance Co.'s ("MetLife") motion for summary judgment and separate statement of facts (docs. 42 & 43), plaintiff's response (doc. 69), and MetLife's reply and first amended controverting statement of facts (docs. 71 & 72). The court also has before it defendant The St. Paul Travelers Cos.' ("Travelers") motion for summary judgment and separate statement of facts (docs. 44 & 45), plaintiff's response (doc. 67), and Travelers' reply (doc. 74). Finally, the court has before it plaintiff's motion for de novo review and penalties (doc. 47), memorandum of points and authorities (doc. 48), and separate statement of facts (doc. 49); MetLife's response and separate statement of facts (doc. 57 & 58) and plaintiff's reply and notice of errata (docs. 61 & 62); and Traveler's response (doc. 60) and plaintiff's reply (doc. 63).

**I**

This is an action concerning long term disability benefits pursuant to a plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), Pub. L. No. 93-406, 88 Stat. 829 (codified as amended in scattered sections of 29 U.S.C.).  Plaintiff is a former employee of defendant Travelers.  Defendant MetLife issued a long term disability plan ("the Plan") to Travelers' employees, effective January 1, 2003.  See Admin. Record at 00363.  Travelers is the "plan administrator," but MetLife is the "claims administrator." MetLife "in its discretion has authority to interpret the terms, conditions, and provisions of the entire contract" and therefore to determine whether an employee is entitled to benefits under the Plan.  Id. at 00365.

Plaintiff stopped working on June 10, 2004, and filed a claim with MetLife for benefits.  After several attempts to contact plaintiff, MetLife finally reached her on June 24, 2004, when she cited various mental health issues that prevented her from working.  After receiving some medical documentation, MetLife granted plaintiff short term benefits through July 30, 2004, later extended through September 8. On August 24, 2004, after further contact with physicians, MetLife granted plaintiff long term disability benefits, but admonished her that they could be withdrawn unless she applied for Social Security disability benefits. MetLife noted that an update on the Social Security application was past due as of September 27, 2004.  On October 11, 2004, plaintiff told MetLife that she had requested a copy of the Plan from Travelers and that once she received it she would be contacting an attorney to determine whether the Social Security benefits application was indeed necessary.

In October, 2004, MetLife received additional information from plaintiff's physician indicating that her mental health problems precluded her from returning to work.  MetLife continued the long term benefits despite not having received evidence of plaintiff's application for Social Security benefits. On December 12, 2004, plaintiff told MetLife that she was applying for Social Security benefits and that the application was being handled by an attorney.  In January, 2005, MetLife sought updates on plaintiff's condition, but both plaintiff's physician and her therapist said that they had been instructed by plaintiff not to

release information to anyone.  On February 16, 2005, MetLife wrote plaintiff, expressing a "Final Request" for proof of her Social Security application.  On February 24, 2005, attorney Eric Slepian informed MetLife that he was now representing plaintiff.  Slepian requested a long list of documents including a copy of the Plan and policy, a copy of the summary plan description, copies of all internal notes concerning MetLife's consideration of plaintiff's claim, and copies of all other information relevant to the claim.

On April 12, 2005, Slepian's clerk advised MetLife that plaintiff had an interview with the Social Security Administration and merely needed to submit her application.  Slepian himself was apparently out of contact with MetLife for some weeks.  On June 10, 2005, Travelers instructed MetLife not to comply with Slepian's request for documents without a subpoena.  On June 30, 2005, MetLife informed Slepian of Travelers' position regarding the production of documents.  They also discussed plaintiff's failure to provide proof of continuing disability.  On July 6, 2005, MetLife wrote Slepian requesting medical documentation of plaintiff's continuing disability and enclosed various forms to be completed.   On July 28, 2005, Travelers instructed MetLife to terminate benefits.  Id. at 00278.  The next day, Metlife notified Slepian that plaintiff's long term disability benefits were terminated for failure to apply for Social Security benefits and for failure to provide proof of continuing disability.  Under the Plan, plaintiff had 180 days to appeal MetLife's termination of benefits.  See id. at 00396.

Slepian continued to request information regarding plaintiff's claim from MetLife.  On August 18, 2005, MetLife received permission from Travelers to provide Slepian with the Plan, the policy, and the summary description.  On August 19, 2005, MetLife forwarded Slepian the documents and informed him that any further medical documentation that he submitted regarding plaintiff would be handled as an appeal.  On December 16, 2005, Slepian submitted to MetLife a psychological questionnaire and other forms supplied by MetLife; he also expressed intent to provide additional medical documentation.  MetLife did not construe Slepian's contact as a proper appeal and therefore closed plaintiff's claim on January 13, 2006, at the end of the 180-day period.

1      Plaintiff filed this action on June 7, 2006, and amended the complaint on May 30,

2  2007, seeking various forms of relief including statutory penalties for defendants' long delay

3  in providing plaintiff a copy of the Plan and other documents relevant to her claim.  We

4  construe plaintiff's present motion as one for partial summary judgment limited to the

5  standard of review and to the issue of statutory penalties.  Both defendants have moved for

6  summary judgment on the entire action.

7                                    **II**

8      In this ERISA action, we review the administrator's determination on plaintiff's

9  application for benefits under the Plan.  Where, as here, the Plan specifically grants the

10  claims administrator discretion to determine eligibility, the standard of review is generally

11  deferential, and a determination will be overturned only for abuse of discretion.  Lang v.

12  Long-Term Disability Plan of Sponsor Applied Remote Tech., 125 F.3d 794, 797 (9th Cir.

13  1997).  Plaintiff contends that we should apply de novo review because MetLife, as both the

14  policy issuer and the claims administrator, is a "conflicted fiduciary."  That is, MetLife's own

15  financial interest in the award of benefits is contrary to the interest of plaintiff, whose claim

16  it has the responsibility of reviewing.  However, de novo review is not automatic where a

17  claims administrator with discretionary authority is also the Plan issuer.  Abatie v. Alta

18  Health & Life Ins. Co., 458 F.3d 955, 966–67 (9th Cir. 2006).  Instead, this dual status only

19  triggers a "level of skepticism" in the abuse of discretion analysis, unless there is additional

20  evidence of malice or self-dealing.  Id. at 968.  Here we find no such additional evidence.

21  Therefore, we deny the motion for de novo review and employ the abuse of discretion

22  standard.

23      We now turn to defendants' motions.  Summary judgment is appropriate where there

24  is no genuine issue of material fact and the moving party is entitled to judgment as a matter

25  of law.  Padfield v. AIG Life Ins. Co., 290 F.3d 1121, 1124 (9th Cir. 2002).  In this action,

26  therefore, the question is whether the undisputed facts compel a finding that the claims

27  administrator did not abuse its discretion in terminating plaintiff's award of long term

28  disability benefits and eventually closing her claim.  We conclude that the facts do not

1   compel such a finding.  On the contrary, we conclude that the undisputed facts require this
2   claim be remanded to the claims administrator for a redetermination.

3       A review of the record makes clear that none of the parties to this action are without
4   blame in this train wreck of a private-benefits determination.  Plaintiff, for her part, was
5   unaccountably dilatory in responding to MetLife's repeated, reasonable requests that she
6   supplement her claim for benefits with proof of a Social Security benefits application and
7   additional medical documentation.  That being said, plaintiff appears to have questioned
8   whether an application for Social Security benefits was necessary in order to receive benefits
9   under the Plan and apparently did not have a copy of the plan to verify that herself.  MetLife
10  did not terminate her claim for Plan benefits before she was able to retain the assistance of
11  counsel to help guide her through the process.

12      Of all the missteps in this process, we find most alarming defendants' refusal to
13  comply with plaintiff's request for documents.  Slepian clearly requested documents in a
14  letter dated February 24, 2005.  Slepian requested *all* information that MetLife had relating
15  to plaintiff's claim, including a copy of the Plan, policy, and plan summary.  Mere common
16  sense suggests that defendants should have supplied plaintiff with at least those documents;
17  the statute commands it.  29 U.S.C. § 1024(b)(4) ("The administrator shall, upon written
18  request of any participant or beneficiary, furnish a copy of the latest updated summary, plan
19  description . . . or any other instruments under which the plan is established or operated."
20  (internal footnote omitted)).  Plaintiff was not provided these documents until August 19,
21  2005, Admin. Record at 00046, which was *after* her long term benefits had been terminated.
22  We conclude that terminating plaintiff's benefits before she was provided with a requested
23  copy of the Plan and updated summary was an abuse of discretion.  Cf. U.S. v. Sarault, 840
24  F.2d 1479, 1484 (9th Cir. 1988) ("One of the forces behind the enactment of ERISA was the
25  need to have more information available to plan beneficiaries so they can enforce their own
26  rights.").

27      We remand plaintiff's claim for disability benefits pursuant to the Plan to the claims
28  administrator, MetLife.  See Cool Fuel, Inc. v. Connett, 685 F.2d 309, 311 (9th Cir. 1982)

(permitting district court to grant summary judgment to non-moving party sua sponte).  We admonish plaintiff that she must comply with MetLife's requests for proof of Social Security benefits application and further medical documentation within a reasonable time.  Otherwise, now that plaintiff has been supplied with the relevant documents, defendants will have good cause to terminate her benefits for lack of cooperation.  In the case of an adverse ruling, plaintiff shall have 180 days as established in the Plan to appeal.  However, plaintiff must follow Plan procedures to appeal properly.  We take no position on the ultimate issue whether benefits should be awarded.

**III**

When plaintiff, through attorney Slepian, requested documents from MetLife, the request was forwarded to the legal department at Travelers.  Travelers responded,

> If there isn't a lawsuit at this time, we typically won't release any information without a properly served subpoena.  I would recommend that if [plaintiff's] attorney is interested in gathering information, that he serve a subpoena.

Admin. Record at 00053.  As we have noted, Slepian was certainly entitled to at least some of the requested documents.  Rather than make a good-faith effort to comply with the request, Travelers took the position of demanding a subpoena, that is, of encouraging litigation.  That is precisely contrary to what Congress intended with ERISA, by which private parties are encouraged to administer their own employee-benefit plans without involving the judicial system whenever possible.  See Amato v. Bernard, 618 F.2d 559, 567 (9th Cir. 1980).  Travelers has now embroiled itself in this expensive litigation.  We conclude that statutory penalties are appropriate.

Under ERISA, any administrator who fails to comply "with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary" within 30 days may in the court's discretion be liable to such participant or beneficiary in an amount up to $110 per day from the date of such failure.  29 U.S.C. § 1132(c)(1); 29 C.F.R. § 2575.502(c)(1).  By the terms of the statute, only the plan administrator, rather than the claims administrator, can be liable for statutory penalties.  Jones v. UOP, 16 F.3d 141, 144 (7th Cir. 1994).  In this instance, the plan administrator is

1   Travelers.  Travelers contends that it cannot be liable for the statutory penalties because the
2   request for documents was directed only to MetLife.  Because Travelers had actual notice
3   of the request, and was responsible for refusing it, we find this a disingenuous contention.
4   Travelers was notified of Slepian's request by June 10, 2005, at the latest.  On that date,
5   Travelers instructed MetLife not to comply with the request without a subpoena.  The Plan,
6   policy, and summary were provided 70 days later on August 19, 2008.  Therefore, statutory
7   penalties are appropriate in the amount of $110 times the 40 days beyond the 30-day
8   deadline, for a total of $4,400.

9                                                                          **IV**

10          For the foregoing reasons, **IT IS HEREBY ORDERED DENYING** defendant
11   MetLife's motion for summary judgment (doc. 42) and **ORDERED DENYING** defendant
12   Travelers' motion for summary judgment (doc. 44).  **IT IS FURTHER ORDERED**
13   **GRANTING IN PART AND DENYING IN PART** plaintiff's motion for partial summary
14   judgment (docs. 47 & 48) as follows:  The motion for de novo review is denied, and the
15   motion for statutory penalties is granted in the amount of $4,400.  **IT IS FURTHER**
16   **ORDERED REMANDING** plaintiff's claim for long term disability benefits for a
17   redetermination by the claims administrator, MetLife.  We take no position on the award of
18   benefits.  All the claims of all the parties having been resolved, the clerk is directed to enter
19   final judgment.

20          DATED this 6th day of March, 2008.

21

22

23   _____
                Frederick J. Martone
24              United States District Judge

25

26

27

28